**O**

# United States District Court
# Central District of California

JAMES M. JERRA,

        Plaintiff,

    v.

UNITED STATES OF AMERICA, *et al.*,

        Defendants.

Case № 2:12-cv-01907-ODW (AGRx)

**ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, MOTION TO ALTER OR AMEND JUDGMENT, MOTION FOR RELIEF FROM JUDGMENT, AND MOTION FOR NEW TRIAL [306]; GRANTING, IN PART, PLAINTIFF'S MOTION FOR PRE- AND POST-JUDGMENT INTEREST [307]**

## I.    INTRODUCTION

This case was tried to a jury in April 2017, which resulted in a verdict in favor of Plaintiff James M. Jerra.  The Court entered a stipulated judgment in favor of Jerra on September 26, 2017.  (ECF No. 302.)  Defendants now renew their Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(b), and move to alter or amend the judgment under Rule 59(e), for relief from the judgment under Rule 60, and for a new trial under Rule 59(a).  (Mot., ECF No. 306.)  For the reasons set forth below, the Court **DENIES** Defendants' Motion on all grounds.

Jerra also moves to alter or amend the judgment to include pre- and post-judgment interest.[1]  (Pl.'s Mot., ECF No. 307.)  The Court **GRANTS**, in part, Jerra's motion to alter or amend the judgment.

## II.  FACTS

Jerra was incarcerated at the Federal Correctional Complex in Lompoc, California in 2009.  Leading into trial, Jerra asserted an Eighth Amendment *Bivens* claim for excessive force against Defendant Baltazar Magana; a First Amendment *Bivens* claim for retaliation against Defendants Magana, Edwin Navato, Jorge Garcia, and Charles Grigg (collectively, "Defendant Officers"); and claims under the Federal Tort Claims Act ("FTCA") for assault, battery, and negligence against the United States.  (Pretrial Conference Order, ECF No. 240-1.)

Jerra's First Amendment claims were based on a series of administrative write-ups he received from the Defendant Officers, which were allegedly in retaliation for Jerra's expression of his First Amendment rights, through the Bureau of Prison's ("BOP") administrative remedy process.  (*See id.* at 5.)  His Eighth Amendment claim was based on an incident that occurred in the prison law library on February 18, 2009.  (*See id.* at 4, 13–14.)

### A.  First Amendment Claims

Jerra argued to the jury that Magana and his colleagues engaged in a campaign of harassment, retaliation, and abuse against him.  Jerra submitted evidence that: 1) Jerra engaged in First Amendment-protected speech by filing administrative grievances against the Defendant Officers; 2) Defendant Officers took action against Jerra by singling him out for special housing unit ("SHU") cell searches, confiscating Jerra's grievances and other documents, threatening Jerra with more SHU time, roughing Jerra up, and over-detaining Jerra in the SHU for no legitimate correctional purpose; 3) Jerra's protected speech was a substantial motivating factor for Defendant Officers'

---

[1] After considering the papers filed in connection with these motions, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

actions; and 4) Defendant Officers' actions did not reasonably advance a legitimate correctional goal. (*See* Apr. 4 Tr. 64:12–73:1 (opening statement summarizing evidence), 161:23–170:16, ECF No. 308.) Jerra also advanced a theory that the incident in the prison law library may have also been in retaliation for Jerra's expressive acts. (*See* Apr. 11 Tr. 80:15–90:7, ECF No. 318.)

**B.      The Library Incident**

At trial, the parties presented competing versions of what happened on February 18, 2009, in the prison law library.

Jerra's version, was generally supported by one witness, Charles Sigerseth. Jerra testified that at about 8:30 p.m., Magana entered the prison law library and ordered Jerra to submit to a "strip search." Because Jerra had been assaulted by Magana in the past, he requested, "very calmly," that the search be supervised by another BOP official. Magana did not summon another official to observe the search. The two exchanged words in this fashion a few more times, each time in a slightly escalated tone. Magana then screamed at Jerra that he would be going to the hole, spun him around, and handcuffed one of his hands. Jerra then "felt his hand reach around [him] and start going under [his] pants." Jerra instinctively pulled away from Magana when Magana attempted to reached towards his genitals, given his prior experiences where Magana squeezed his testicles. (Apr. 5 Tr. 45:19–51:21, ECF No. 310 ("[S]o the two thoughts around through my mind he's going to squeeze my testicles really hard…or he's going to plant contraband…. This is nanoseconds, instinctively, I pulled away.").) In response, Magana grabbed Jerra and spun him around, and Jerra went to the ground, at which point "Magana hit him a few more times while [Jerra was] down, and then jumped on his back…." (Apr. 6 Tr. 146:151:13, ECF No. 312.) As a result of the encounter, Jerra suffered a laceration above his eye, and damage to his cervical spine (Apr. 5 Tr. at 51:1–21, 61:10–20, 69:14–21, ECF No. 310; Apr. 6 Tr. at 32:18–33:17, ECF No. 312.)

Magana's version of events, also generally supported by one witness, was slightly

different. Most importantly, Magana contended that he did not request that Jerra submit to a "strip search," but, rather, only requested a "pat down" search. Jerra refused to comply with Magana's request four or five times, in violation of prison policy. Then, Jerra pulled away when Magana tried to handcuff him, also in violation of prison policy. Surrounded by other inmates in the prison library and alone, Magana swung both hands at Jerra, but Jerra continued to resist. Magana finally was able to grab Jerra's hair, and take him to the floor. Jerra's head hit a lectern on the way down, and Magana landed on top of Jerra's upper back, finally able to take control of the situation. (Apr. 5 Tr. 50:2–52:19, 132:1–133:5, 170:20–189:10, ECF No. 310; Apr. 7 Tr. 91:1–94:22, ECF No. 314 (testimony of supporting witness Cooke Christopher).)

## C. Defendants' Pre-Verdict Motion & the Verdict

After the close of Jerra's case, Defendants moved for judgment as a matter of law, pursuant to Rule 50(a). Defendants argued there was not sufficient evidence for Jerra's claims, and that the Defendants were entitled to qualified immunity. (Apr. 7 Tr. at 1:16–18:20, ECF No. 314.) The Court denied the Motion, with the exception of the claims against Garcia, who the Court dismissed. (*Id.* at 17:21–24.) The jury found:

| Claim | Defendant | Liable | Damages |
| --- | --- | --- | --- |
| First Amendment Retaliation | Griggs | No | N/A |
| First Amendment Retaliation | Navato | Yes | $10,000 |
| First Amendment Retaliation | Magana | Yes | $20,000 |
| Eighth Amendment Excessive Force | Magana | Yes | $645,000[2] |

[2] The jury also found that Jerra established, by clear and convincing evidence, that Magana's conduct was "malicious, oppressive, or in reckless disregard of [Jerra's] constitutional rights." (Verdict 8, ECF No. 284.) As a result, $175,000 of these damages were punitive, and $470,000 were compensatory.

### III.   LEGAL STANDARD

Defendants seek to overturn the jury's verdict on several procedural grounds. To succeed on a renewed motion for judgment as a matter of law under Rule 50(b), the moving party must: 1) have raised the issues in its pre-verdict Rule 50(a) motion; and 2) demonstrate that there is "no legally sufficient basis for a reasonable jury" to have found in the non-moving party's favor. Fed. R. Civ. P. 50(b); *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001); *see also Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) ("A party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion.").

A new trial under Rule 59(a) is only warranted where the moving party can show that the jury's verdict was "contrary to the clear weight of the evidence, based upon false or perjurious evidence, or involved a miscarriage of justice…." *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000) (citing *Wharf v. Burlington Northern R.R. Co.*, 60 F.3d 631, 637 (9th Cir. 1995)).

Defendants also move, in the alternative, to amend the judgment, pursuant to Rule 59(e). Applicable here, courts may grant a Rule 59(e) motion where the movant demonstrates "that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based…" or that there is an "intervening change in controlling law." *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995)).

Finally, Rule 60(b) provides parties an avenue to seek relief from a judgment for several enumerated reasons not applicable here, in addition to a catch-all provision. Fed. R. Civ. P. 60(b)(6) (providing for relief from judgment for "any other reason that justifies relief"). Courts apply the catch-all provision "sparingly as an equitable remedy to prevent manifest injustice…." *Fantasyland Video, Inc. v. Cty. of San Diego*, 505

---

(*Id.*) The parties stipulated that any punitive damages awarded by the jury would be capped at $5,000, and that amount is reflected in the Stipulated Judgment. (ECF No. 302.)

F.3d 996, 1005 (9th Cir. 2007) (quoting *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993)).

## IV.    DEFENDANTS' MOTIONS

Defendants assert seven reasons the Court should overturn the jury's verdict. The Court addresses each in turn.

### A.    *Ziglar v. Abbasi* **Does Not Warrant Overturning the Jury's Verdict**

Defendants argue that *Ziglar v. Abbasi*, decided by the Supreme Court after the trial in this case, changes the legal landscape for Jerra's *Bivens* claims. (Mot. 4–8 (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).)  In *Bivens*, the Supreme Court established an implied remedy for money damages against federal employees who violate a plaintiff's Fourth Amendment rights, while acting under the color of law. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 396–97 (1971).  Since *Bivens*, the Supreme Court has extended its holding to two additional scenarios: a violation of the Eighth Amendment's Cruel and Unusual Punishments Clause and a violation of the Fifth Amendment's Due Process Clause. *Carlson v. Green*, 446 U.S. 14, 19–22 (1980) (allowing *Bivens* claim under Eighth Amendment for failure to treat prisoner's asthma); *Davis v. Passaman*, 442 U.S. 228, 248–49 (1979) (allowing *Bivens* claim under Fifth Amendment's Due Process Clause where Congressman fired plaintiff because she was a woman).   Courts apply *Bivens* through a two-step analysis that requires analyzing: 1) whether the claim arises in a new context; and 2) whether special factors counsel against implying a damages remedy. *Ziglar*, 137 S. Ct. at 1849.

### 1.    New Context

The Court must first address whether Jerra's claims arise in a new *Bivens* context. *Id.*  "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court], then the context is new." *Id.* at 1859–60.  In *Ziglar*, the Supreme Court established a non-exhaustive list of "meaningful differences," which includes: "the rank of the officers involved; the constitutional right at issue; the extent of judicial guidance for the official conduct; the risk of disruptive intrusion by the Judiciary into

6

the functioning of other branches; or the presence of potential special factors not considered in previous *Bivens* cases." *Id.*

In *Ziglar*, the policies being challenged—"the confinement conditions imposed on illegal liens pursuant to a high-level executive policy created in the wake of a major terrorist attack on American soil"—differed greatly from the Supreme Court's previous applications of the *Bivens* remedy. *Id.* at 1860. Given these "meaningful differences," the Supreme Court found that the claims arose in a "new context," requiring a special factors analysis. *Id.*

Jerra argues that his Eighth Amendment claim is not meaningfully different than the claim asserted in *Carlson*. 446 U.S. at 19–22 (allowing *Bivens* claim under Eighth Amendment for failure to treat prisoner's asthma). Jerra argues that "both cases involve (1) mistreatment of a federal prison inmate; (2) which was perpetrated by federal prison officials; (3) conduct that occurred in a public federal prison; (4) Eighth Amendment violations; (5) acts that caused physical injury to an inmate; and (6) claims for compensatory and punitive damages." (Opp'n 7, ECF No. 327.) Jerra does not address whether his First Amendment claims arise in a new context.

Defendants counter that: (1) Jerra concedes the First Amendment claims arise in a new context because he failed to address them; and (2) while Jerra's Eighth Amendment claim shares some similarities with *Carlson*, it is governed by different legal standards, and thus warrants a special factors analysis. (Reply 1–2, ECF No. 329.)

With respect to *Ziglar*'s effect on Jerra's First Amendment claim, the Ninth Circuit recently acknowledged that it has previously extended the *Bivens* remedy to the First Amendment where "plaintiffs have alleged that FBI agents acted with the impermissible motive of curbing [the plaintiff's] protected speech…." *Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018) (quoting *Gibson v. United States*, 781 F.2d 1334, 1342 (9th Cir. 1986)). As framed by Defendants, Jerra's First Amendment retaliation claims rely on his allegations that "Officer Magana harassed [him] for administrative grievances," and that "Officer Navato threatened and harassed [him] for

administrative grievances against Officer Magana." (Mot. 5, ECF No. 306.) These claims do not meaningfully differ from the claim at issue in *Gibson*, where the Ninth Circuit approved a *Bivens* action where federal employees "acted with the impermissible motive of curbing Gibson's protected speech…." *Gibson*, 781 F.2d at 1342.

However, in finding a "new context" in *Vega*, the Ninth Circuit explained that, "neither the Supreme Court *nor we* have expanded *Bivens* in the context of a prisoner's First Amendment access to court…claims." *Vega*, 881 F.3d at 1153 (emphasis added). Jerra does not have an access to court claim. The Ninth Circuit's reference to "we" could imply that *Bivens* avenues previously accepted by the Ninth Circuit, but not addressed in one of the Supreme Court's three *Bivens* cases, may still be accessible after *Ziglar*. *See id.* (emphasis added). Yet, the Supreme Court held: "If the case is different in a meaningful way from previous *Bivens* cases *decided by this Court*, then the context is new." *Ziglar*, 137 S. Ct. at 1859 (emphasis added). Therefore, the Court evaluates Jerra's First Amendment claims as arising in a new context, requiring a special factors analysis. *See id.*

With respect to Jerra's Eighth Amendment claims, he does not establish that his claims, which arise from a federal officer's unwarranted and excessive force, are not meaningfully different than the claim in *Carlson*. The constitutional right at issue here and in *Carlson* both grow from the Eighth Amendment's Cruel and Unusual Punishments Clause. However, an officer's failure to provide medical care where doctors have advised of a serious asthmatic condition, *see Carlson*, 446 U.S. at 16 n.1, is different than Jerra's claim for excessive force. Accordingly, the Court employs a special factors analysis for this claim, too. *See Ziglar*, 137 S. Ct. at 1860 ("A case might differ in a meaningful way because…the statutory or other legal mandate under which the officer was operating….").

###### 2. *Special Factors*

"In the first place, there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Vega*, 881 F.3d at 1153 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). Second, the Court asks whether there are "'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* (quoting *Carlson*, 446 U.S. at 18). Defendants argue there are alternative remedies that would adequately allow Jerra to assert his rights: injunctive relief, state tort law, the FTCA, and BOP administrative remedies. (Mot. 5–8, ECF No. 306.)

While alternative remedies need not be "perfectly congruent," they do need to provide "roughly similar incentives" to deter the bad conduct, and compensate the plaintiff. *Minneci v. Pollard*, 565 U.S. 118, 129–30 (2012) ("Rather, in principle, the question is whether, in general, state tort law remedies provide roughly similar incentives for potential defendants to comply with the Eighth Amendment while also providing roughly similar compensation to victims of violations.") As urged by Jerra, Defendants' proposed, alternative remedies amount to "no alternatives at all." *Linlor v. Polson*, 263 F. Supp. 3d 613, 620 (E.D. Va. 2017).

- **Injunctive relief**: At trial, Jerra sought compensation for harm he suffered in 2008 and 2009. Injunctive relief, however, does not compensate him for the harm he suffered, and does not present an adequate alternative. *See Engle v. Buchan*, 710 F.3d 698, 706 (7th Cir. 2013) (holding writ of habeas corpus not sufficient alternative remedy because it provides injunctive relief, and "cannot perform a compensatory function.").

- **State Tort Law**: State law does not provide a remedy because the Westfall Act immunizes Defendants from being sued in their individual capacities under California tort law. *Osborn v. Haley*, 549 U.S. 225, 237–38 (2007).

- **FTCA**: The Supreme Court has made "crystal clear that Congress views FTCA

9

and *Bivens* as parallel, complementary causes of action." *Carlson*, 446 U.S. at 20. Each claim also provides different remedies and a different "deterrent purpose." *Id.* at 21; *see also Linlor*, 263 F. Supp. 3d at 621.

- **BOP Administrative Remedies**: This process does not preclude a *Bivens* remedy in a situation such as here where some of Jerra's claims were based on the fact the grievances he filed pursuant to the BOP's process resulted in retaliation from Defendants. Jerra's First Amendment claims are derivative of stifled BOP remedies.

Viewing these alternative remedies as a whole, and from an ex ante perspective, as urged by Defendants, the Court finds they do not preclude a *Bivens* remedy. These remedies do not provide roughly the same deterrent effect, or compensation to Jerra. *See Minneci*, 565 U.S. at 129–30.

Defendants also argue that the Prison Litigation Reform Act ("PLRA") and Prison Rape Elimination Act ("PREA") evidence a "considered congressional judgment about the best way to implement the Eighth Amendment." (Mot. 8.) Jerra responds that the PLRA does not apply to suits, like his, that are filed after a prisoner is released from custody. (Opp'n 9, ECF No. 327;) *Talamantes v. Leyva*, 575 F.3d 1021, 1024 (9th Cir. 2009) (holding only individuals who are prisoners at the time they file suit must comply with exhaustion requirements of PLRA).

Defendants analogize to *Ziglar* by arguing that there the prisoner filed suit after release from custody, too, and the special factors analysis precluded a *Bivens* remedy. *See Ziglar*, 137 S. Ct. at 1853. The Court takes heed of *Ziglar*, but recognizes that the circumstances and special factors addressed there were far different than those the Court must consider here. In *Ziglar*, the plaintiffs were illegal alien detainees, who were held subject to a "hold-until-cleared policy" without bail in the wake of September 11th. *Id.* at 1852–53. Each of the plaintiffs was held between three to eight months, and challenged the conditions of their confinement. *Id.* at 1853. In analyzing the special factors, the Supreme Court considered: "high-level executive policy created in the wake

of a major terrorist attack on American soil," *id.* at 1860, the fact that a *Bivens* claim "is brought against the individual official for his or her own acts, not the acts of others," *id.*, "that the discovery and litigation process would either border upon or directly implicate the discussion and deliberations that led to the formation of the policy in question," *id.* (citing *Federal Open Market Comm. v. Merrill*, 443 U.S. 340, 360 (1979)), and that "[n]ational-security policy is the prerogative of the Congress and President." *Id.* at 1861 (citing U.S. Const. Art. I, § 8, Art. II, § 1, § 2).

In stark contrast, Jerra's claims involve two individual officers, and their individual actions—not large-scale government policies. Jerra's claims do not implicate national security, executive policy, or the other largely political concerns addressed in *Ziglar*. Furthermore, the Supreme Court explained that it was "of central importance…that *Ziglar* is not a case like *Bivens* or *Davis* in which 'it is damages or nothing.'" *Id.* at 1862 (quoting *Bivens*, 403 U.S. at 410 (Harlan, J., concurring in judgment)). Jerra challenges "individual instances of discrimination or law enforcement overreach, which due to their very nature are difficult to address except by way of damages actions after the fact." *Id.*; *see also McLean v. Gutierrez*, ED CV 15–275–RGK (SP), 2017 WL 6887309, at *19 (C.D. Cal. Sept. 28, 2017), *report and recommendation adopted sub nom. McLean v. Gutierrez*, No. ED CV 15–275–RGK (SP), 2018 WL 354604, at *1 (C.D. Cal. Jan. 10, 2018) (applying *Ziglar* and rejecting same arguments as proffered by Defendants here). The circumstances of Jerra's claims do not raise the same concerns voiced by the Supreme Court in *Ziglar*, and the Court **DENIES** Defendants' Motion on these grounds for that reason.[3] *Ziglar* does not foreclose Jerra's *Bivens* remedies.

**B.    Statute of Limitations**

Defendants argue that Jerra's *Bivens* claims are barred by the statute of

---

[3] Jerra also argued that Defendants waived this argument pursuant to Rule 50(b) because they failed to raise it in their pre-verdict motion. (Opp'n 5.) *Ziglar* was decided after the trial, and thus could not have been raised in a pre-verdict motion. In any event, the Court finds Defendants' *Ziglar* argument unpersuasive under any standard.

limitations. (Mot. 8–11, ECF No. 306.) Jerra contends that Defendants waived this argument because they failed to raise it in their pre-verdict Rule 50(a) Motion, or in their Answer. (Opp'n 11, ECF No. 327.) Rule 50(a) allows a party to move for judgment as a matter of law after the opposing party has been fully heard, and before the matter is submitted to the jury. "A party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *Freund*, 347 F.3d at 761 (citing cases).

In Reply, Defendants seem to concede that they did not base their pre-verdict Rule 50(a) motion on a statute-of-limitations defense (or many of their other arguments raised for the first time here). (Reply 1, ECF No. 329.) Instead, Defendants cite two out-of-circuit cases that they contend support the position that they may raise purely legal issues despite failing to raise them in their Rule 50(a) motion. (*Id.*) However, one of the purposes of requiring a party to raise arguments first via pre-verdict motion is to "call to the court's and the parties' attention any alleged deficiencies in the evidence at a time when the opposing party still has an opportunity to correct them." *Freund*, 347 F.3d at 791. Jerra contends that he was deprived of just that opportunity. (Opp'n 12, ECF No. 327.) This concern coupled with the fact that Defendants failed to raise the defense in their Answer precludes the Court from overturning the jury's verdict. *Freund*, 347 F. 3d at 791; *Wood v. Milyard*, 566 U.S. 463, 470–71 (2012) (quoting *Day v. McDonough*, 547 U.S. 198, 202 (2006)) ("Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto.").

Defendants further argue that they should be permitted to amend their Answer to assert the defense because it was tried by consent of the parties, pursuant to Rule 15(b)(2). (Reply 2–6, ECF No. 329.) This argument too must fail. Defendants cite Jerra's testimony establishing a timeline of events as supporting their claim the parties implicitly tried the limitations issue. (*Id.* at 5 (citing Apr. 11 Tr. 85:21–24, 86:16–23, 87:5–9, ECF No. 318).) They also claim that because other defendants asserted statute

of limitations defenses, Jerra was on notice.  Jerra, on the other hand, denies that he consented to trying the statute of limitations issue, and argues that the timing of his injuries and the events underlying his entire action were necessary to establishing his case generally.  (Opp'n 11, ECF No. 327.)  That certain facts pertinent to Defendants' unraised defense were touched upon does not mean that they were implicitly tried.  *In re Acequia, Inc.*, 34 F.3d 800, 814 (9th Cir. 1994) (quoting *LaLonde v. Davis*, 879 F.2d 665, 667 (9th Cir. 1989)) ("To establish implied consent, the [plaintiff] must demonstrate that [the defendant] understood evidence had been introduced to prove [the new issue], and that [the new issue] had been directly addressed, not merely inferentially raised by incidental evidence.").  Accordingly, the Court **DENIES** Defendants' Motion on this ground.

**C.    Qualified Immunity**

Magana argues that Jerra's Eighth Amendment claim is barred by the doctrine of qualified immunity.  (Mot. 11–18, ECF No. 306.)  "To determine whether qualified immunity applies in a given case, we must determine: (1) whether a public official has violated a plaintiff's constitutionally protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation.  *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017) (citing *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 788 (9th Cir. 2016) (en banc)).  There are several prongs to Magana's argument.

*1.    Whether* Heck v. Humphrey *Applies*

Magana first argues that the factual findings established in Jerra's BOP post-incident disciplinary proceedings cannot be disputed because of the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny.  The Supreme Court has held that a prisoner may not bring claims that "would necessarily imply the invalidity of" a prior judicial proceeding.  *Id.* at 487.  This holding has since been extended to prison disciplinary proceedings. *Edward v. Basilok*, 520 U.S. 641, 644, 647 (1997).  Magana's *Heck* argument is important because typically on a Rule 50(b) motion

the Court is required to "construe the facts in the light most favorable to the jury's verdict." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1065 n.1 (9th Cir. 2016) (citing *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)). However, Magana argues that, because the jury was required to believe findings made at Jerra's disciplinary proceedings, the Court is *not* required to construe the facts in a light most favorable to the jury's verdict. (Mot. 13, ECF No. 306 (citing *Shafer*, 868 F.3d at 1115).) Jerra argues that *Heck* does not apply because Jerra's damages did "'not arise from any deprivation that occurred as a result of the institutional proceedings, but rather from the use of force by the officers.'" (Opp'n 15 n. 4, ECF No. 327 (quoting *Bowman v. Large*, No. 2:01CV71034, 2003 WL 21246030, at *2 (W.D. Va. May 29, 2003)).)

As a preliminary matter, while Magana raised qualified immunity generally in his Rule 50(a) motion, he did not address *Heck* or its allegedly preclusive effect. (Apr. 7 Tr. at 10:18–18:20, ECF No. 314; Apr. 11 Tr. at 9:1–13:24, ECF No. 318.) Furthermore, one of the most pertinent facts considered by the jury seems to be whether Magana ordered a "strip search," or a "pat search." This fact is important because it supports Jerra's argument that he "instinctively" pulled away from Magana when Magana reached for his pant button, and also supports a finding that Magana did not act reasonably. (Opp'n 13–14, ECF No. 327.)

Magana argues that the BOP disciplinary proceeding established that Magana requested a pat search, and that now, pursuant to *Heck*, the Court is, and the jury was, required to accept that fact as true. (Mot. 14.) However, the "Conclusions and findings" in the BOP's report simply points out conflicting evidence: "[Jerra] admitted that [he] refused Counselor Magana's orders for a *strip search* without a Lieutenant present. However the DHO noted that the report writer and one of your witness's [sic] stated that the order was for a *pat search or shakedown*." (Tr. Ex. 1026-13, ECF No. 306-2 (emphasis added).) Then, the BOP report concludes that Jerra was punished for "refusing to obey an order of a staff member," but does not specifically state what that order was. (*Id.* at 1026-14.) Magana back tracks a bit in Reply and claims that, even if

Jerra "agreed to comply with Officer Magana's order for a strip search if another officer was present[,] it would necessarily imply that Jerra was wrongfully found to have violated prison policy for refusing to obey Officer Magana's order." (Reply 8, ECF No. 329.)

While the BOP concluded that Jerra violated prison policy for failing to submit to a search, whether it be "pat" or "strip," the BOP's finding does not preclude Jerra's claim for damages related to Magana's excessive use of force. A finding that Jerra is entitled to damages for Magana's excessive use of force—a finding made by the jury here—does not "necessarily imply that the plaintiff's [disciplinary proceeding] was wrongful." *Heck*, 512 U.S. at 486 n.6. Instead, Jerra seeks damages for the injuries he suffered as a result of the excessive force, not the result of the disciplinary proceeding. That Jerra testified regarding his time in the SHU is not determinative of this claim, and does not undermine the BOP's disciplinary proceedings that resulted in additional time in the SHU.

The Court rejects Magana's *Heck* argument because: 1) he did not raise it in his pre-verdict Rule 50(a) motion, *Freund*, 347 F.3d at 761; and 2) because the jury's verdict does not necessarily imply that Jerra's disciplinary proceeding was incorrect. *See, e.g.*, *Marquez v. Guttierez*, 51 F. Supp. 2d 1020, 1025 (E.D. Cal. 1999) (citing *Heck*, 512 U.S. at 487 n.7) ("The variety of potential findings demonstrate that a judgment in plaintiff's favor 'would not necessarily imply the invalidity' of his disciplinary conviction, even though under some circumstances it might do so."). Accordingly, the Court's analysis of qualified immunity is not constrained by *Heck* and its progeny, and the Court evaluates Magana's arguments with deference to the jury's verdict. *Castro*, 833 F.3d at 1065 n.1.

### 2. *Violation of Jerra's Constitutionally Protected Right*

In an Eighth Amendment claim for excessive force, courts evaluate five factors: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat

reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). The jury found that Magana used "excessive and unnecessary force," acted "maliciously and sadistically for the purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline," and that Magana's assault caused Jerra injury. (Verdict 7–8, ECF No. 284.) The jury went even further and found that Magana's conduct was "malicious, oppressive, [and/or] in reckless disregard of [Jerra's] constitutional rights." (*Id.* at 8.) These findings were supported by sufficient evidence, and the Court cannot find that no reasonable juror could have come to these conclusions.

Jerra, or in some circumstances Defendants, presented the following evidence that reasonably supports the jury's verdict:

**Factor 1:** Jerra suffered a laceration above his eye, and damage to his cervical spine (Apr. 5 Tr. at 51:1–21, 61:10–20, 69:14–21, ECF No. 310; Apr. 6 Tr. at 32:18–33:17, ECF No. 312);

**Factors 2–5**: Jerra agreed to submit to a strip search, but requested that another officer be present. When he expressed this request he "was extremely calm." He instinctively pulled away from Magana when Magana reached towards his genitals given his prior experiences where Magana squeezed his testicles. (Apr. 5 Tr. at 45:19–51:21, ECF No. 310.) In response, Magana grabbed Jerra and spun him around, and Jerra went to the ground, at which point "Magana hit him a few more times while [Jerra was] down, and then jumped on his back…." (Apr. 6 Tr. 146:1–151:13, ECF No. 312.)

Considering the facts in the light most favorable to the jury's verdict, reasonable jurors could conclude Magana violated Jerra's Eighth Amendment rights. *See Castro*, 833 F.3d at 1065 n.1.

### 3. *Was Jerra's Right Clearly Established?*

The last step of the qualified immunity analysis is to consider whether the right at issue was clearly established at the time of the incident. *Shafer*, 868 F.3d at 1115.

16

"[O]fficials can…be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Magana contends that in *Shafer*, another case decided after trial, the Ninth Circuit held that the rights at issue here were not clearly established law in 2009. (Mot. 15, ECF No. 306.) In *Shafer*, the Ninth Circuit considered whether:

> an officer violates clearly established law when he progressively increases his use of force from verbal commands, to an arm grab, and then a leg sweep maneuver, when a misdemeanant refuses to comply with the officer's orders and resists, obstructs, or delays the officer in his lawful performance of duties such that the officer has probable cause to arrest him in a challenging environment.

*Shafer*, 868 F.3d at 1117. While there are certain similarities between the facts in *Shafer* and here, the glaring difference is that, in *Shafer*, the Ninth Circuit evaluated the question in the context of an "officer in…lawful performance of duties such that the officer has probable cause to arrest the [misdemeanant] in a challenging environment." *Id.* In contrast, the jury here found that Magana used "excessive and unnecessary force" and "acted maliciously and sadistically for the purpose of causing harm, not in a good faith effort to maintain or restore discipline." (Verdict 7, ECF No. 284.) Another fact not present in *Shafer* is that Magana continued to apply force *after* he subdued Jerra. (Apr. 5 Tr. at 49:17–50:15, ECF No. 310; Apr. 6 Tr. at 150:15–151:8, ECF No. 312.)

Magana also argues that the cases relied on by Jerra at summary judgment did not clearly establish Jerra's Eighth Amendment rights. (Mot. 16, ECF No. 306.) For instance, Magana claims that *Furnace v. Sullivan*, 705 F.3d 1021 (9th Cir. 2013), is inapplicable because it was decided after 2009. (*Id.*) However, in *Furnace*, the Ninth Circuit's holding centered "primarily on whether the force used by the officers caused unnecessary and wanton pain and suffering, as defined in *Hudson*, since that law was undoubtedly clear." *Furnace*, 705 F.3d at 1028. *Hudson* established the five-factor test for evaluating a violation of an inmate's Eighth Amendment rights, in 1992, and thus the basis for the holding in *Furnace*, was clearly established in 2009. *Id.*

17

Magana also distinguishes *Furnace* because the officer there acted "without significant provocation." (Mot. 16, ECF No. 306.) While Magana seeks to characterize Jerra's actions as provoking him, at trial, the jury heard evidence that Jerra acted instinctively, and pulled away from him in light of Magana previously squeezing Jerra's testicles. To overturn the jury's verdict on the basis that Jerra was the provocateur in these circumstances would be perverse. Moreover, as urged by Jerra, it was clearly established in 2009 that continuing to exert force after an inmate is subdued constitutes excessive force. *See, e.g.*, *Jones v. Cty. of Sacramento*, No. CIV S-09-1025 DAD, 2011 WL 3163307, at *9 (E.D. Cal. July 25, 2011) ("[T]he state of the law in 2008 was such that defendants were on notice that both the use of force when none was needed and the use of force against a jail inmate in excess of that necessary under the circumstances confronted, would be in violation of the constitution.").

Finally, the evidence at trial was sufficient to allow the jury to find that Magana's actions were not reasonable under the circumstances. As discussed in detail above, Jerra presented evidence that he instinctively pulled away from Magana, as opposed to trying to attack him, and that Magana continued to beat Jerra even after Jerra had been taken to the ground. Accordingly, the Court declines to extend Magana the protections of qualified immunity under these circumstances and **DENIES** Defendants' Motion on this ground.

**D.    Jerra's First Amendment Claim against Magana**

Magana argues Jerra's First Amendment claim is barred by *Heck*, or duplicative of his Eighth Amendment claim. (Mot. 18, ECF No. 306.) The jury returned a verdict that Magana "took adverse action against [Jerra] by writing [him] up for three violations of prison policy on October 31, 2008, and/or by using force against [Jerra] in the law library on February 18, 2009." (Verdict 5, ECF No. 284.) The verdict also established that Jerra's protected speech was a "substantial or motivating" factor for Magana's actions, and that Magana's actions did not "reasonably advance a legitimate correctional goal." (*Id.* at 5–6.) For this, the jury awarded Jerra $20,000. (*Id.*)

*1.*     *The First Amendment Claim is Not* Heck-*Barred*

First, Magana failed to raise this argument in his Rule 50(a) Motion, and thus this argument is viewed from the perspective of a new trial motion. *See Freund*, 347 F.3d at 761. "The trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino*, 212 F.3d at 510 n.15 (citing *Ace v. Aetna Life Ins. Co.*, 139 F.3d 1241, 1248 (9th Cir. 1998)).

Magana claims that because the damages related to this claim are derivative of his time in the SHU—a punishment prescribed by the BOP disciplinary process—that Jerra's claims necessarily imply the invalidity of the prior findings by the BOP, in violation of *Heck*. (Reply 11, ECF No. 328.) However, Jerra challenges the act of discipline, not his punishment, nor does he seek some reduction in sentence or reestablishment of his good-time credits; he is no longer confined. (Opp'n 20, ECF No. 327.) The Seventh Circuit's reasoning on this issue is persuasive: "It is the act of discipline that constitutes the retaliatory conduct—a separate issue from whether [plaintiff] was, in fact, guilty of the conduct alleged in the reports." *Johnson v. Litscher*, 260 F.3d 826, 831 (7th Cir. 2001) (holding *Heck* and *Evans* did not apply to retaliation claim where prisoner sought monetary damages, as opposed to a reduction in sentence); *see also Muhammad v. Close*, 540 U.S. 749, 754–55 (2004). Accordingly, the Court rejects Magana's *Heck* argument.

*2.*     *Magana Has Not Established Impermissible Double Recovery*

The jury awarded $20,000 for Magana's retaliatory actions relating to writing up Jerra three times in one day, and/or for using force against him in the prison library. (Verdict 5, ECF No. 284.) They also awarded $470,000 on Jerra's Eighth Amendment excessive force claim, which was based on the library incident. (*Id.* at 8.) A party is generally entitled to recover once per injury, regardless of the legal theory asserted. *See, e.g.*, *Diversified Graphics, Ltd. v. Groves*, 868 F.2d 293, 295 (8th Cir. 1989). However, the Court should defer to the jury's verdict to the extent it can be

"satisfactorily explained to avoid double recovery." *See Flores v. City of Westminster*, 873 F.3d 739, 751 (9th Cir. 2017), *petition for cert. filed*, (U.S. Feb. 7, 2018) (No. 17-1101).

Here, Jerra asserted two, distinct sources of injury. Magana argues there was a double recovery because Jerra's counsel stated that if the jury deemed it appropriate, they should "put the same number" on both the excessive force and retaliation verdict forms. (Apr. 11 Tr. 89:22–90:7, ECF No. 318.) Magana also argues that Jerra's counsel assured the jury that there "won't be double recovery." (*Id.* at 90:1.) While Jerra's counsel did utter those words, it was clear, when taken in context, that counsel meant that there would not be double recovery as it related to the several defendants. (*Id.* ("There won't be double recovery, that is one number against Counselor Magana, and one number against Officer Navato, one number against Officer Grigg….").) As for the "same number" argument, the jury put two different numbers on the verdict form for the Eighth and First Amendment claims, and awarded $10,000 as against Navato. (Verdict, ECF No. 284.) Accordingly, the verdict can be satisfactorily interpreted to avoid double recovery, and the Court **DENIES** Magana's new trial motion because there has not been a miscarriage of justice.

**E.    Improper Impeachment of Cooke Christopher**

Next in line is Magana's request for a new trial on the grounds that Jerra's counsel improperly impeached the defense's witness, Cooke Christopher, in violation of Federal Rule of Evidence 404(b). (Mot. 20–22, ECF No. 306.) Christopher testified he was convicted of one count of mail fraud for approximately $630, and was incarcerated at Lompoc detention center in February 2009. (Apr. 7 Tr. 87:22—88:15, ECF No. 314.) Christopher observed the events in the prison library and corroborated, to a certain extent, Magana's version of events. (*Id.* at 91:6–94:22.) On cross-examination, Jerra's counsel elicited the following testimony:

> Q. Actually, you told [defense counsel] that you pled
>    guilty to mail fraud; is that right?
> A. Correct.

> Q. To one count?
> A. Yes.
> Q. Of less than $1,000?
> A. Yes.
> Q. But it's true that you were originally indicted on 81 counts, correct?
> A. Correct.
> Q. That was a plea?
> [Defense counsel]: Objection. Rule 404 -- 604.
> THE COURT: Overruled.
> …
> Q. The mail fraud conviction was a plea, the result of a plea?
> A. Yes.
> Q. And was not your original 81-count indictment?
> A. No. One count of mail fraud $620 and some odd cents.

(*Id.* at 97:2–15.)

Jerra contends that Magana failed to adequately object to the improper impeachment, and thus on this new trial motion the Court should review it under the plain error standard. *See S.E.C. v. Jasper*, 678 F.3d 1116, 1124 (9th Cir. 2012) (citing *United States v. Sioux*, 362 F.3d 1241, 1244 n. 5 (9th Cir. 2004)). Magana counters that counsel did object, albeit on the basis of Federal Rule of Evidence 404, which governs "other acts" evidence, and thus the plain error standard is not appropriate. (Reply 12, ECF No. 329.)

Rule 404(b) provides that evidence of a prior crime or act "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Jerra's counsel did not elicit testimony of the 81-count indictment to prove that Christopher acted in conformity with his prior indictment for mail fraud; instead, the testimony was used to impeach Christopher's credibility, which is governed by Federal Rule of Evidence 609. In light of this, the admission of evidence concerning the plea deal is governed by the plain error standard. *See, e.g.*, *United States v. Gomez–Norena*, 908 F.2d 497, 500 (9th Cir.1990) ("[A] party

fails to preserve an evidentiary issue for appeal not only by failing to make a specific objection, ... but also by making the wrong specific objection….") (citations omitted).

There was no plain error here. In any event, there was ample evidence, aside from the 81-count indictment, from which the jury could reasonably disbelieve Christopher, or Magana. For one, Christopher admitted to a conviction for mail fraud, which is why he was in prison at the time of the incident. He also testified that after providing his statement to the BOP, he was released from prison two years before he expected. (Apr. 7 Tr. 106:3–16, ECF No. 314.) Thus, the potential for prejudice was slight, if at all. Accordingly, the Court **DENIES** Magana's new trial motion on these evidentiary grounds.

## F. The $10,000 Verdict against Officer Navato Is Not Excessive

The jury awarded Jerra $10,000 for Navato's retaliatory conduct in violation of Jerra's First Amendment rights. (Verdict 4, ECF No. 284.) The verdict was supported by three incidents: 1) Navato warned Jerra to stop filing administrative grievances; 2) Navato confiscated Jerra's documents; and 3) Navato roughed him up, as described below.

Navato claims $10,000 is excessive. His not-so-apt analogy for why it was excessive goes like this: "For three hours of discomfort not significantly beyond the normal prison experience, the jury awarded more than the full cost of tuition for a two-year associate's degree at the average community college." (Mot. 23, ECF No. 306.) Jerra testified that Navato roughed him up by slapping him on the shoulder, "slam[ing] [him] against the wall a couple times," and left him handcuffed in a cell, while he had to urinate, for three hours, with the handcuffs digging into his wrists. (Apr. 5 Tr. 18:22–19:25, ECF No. 310.) After that, Navato told him, "[i]f you continue to file [grievances] – if you file on anyone any more, we will bury you in the hole so deep you are never going to get out." (*Id.* at 19:22–25.)

In the Ninth Circuit, the Court affords "substantial deference" to a jury's findings as to the appropriate amount of damages. *Del Monte Dunes v. City of Monterey*, 95

F.3d 1422, 1435 (9th Cir. 1996) (citing *Los Angeles Memorial Coliseum Comm'n v. NFL*, 791 F.2d 1356, 1360 (9th Cir.1986)). The Court "must uphold the jury's finding unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Id.*; *see also Passantino*, 212 F.3d at 511. None of these exceptions are present, and the Court declines to overturn the jury's verdict. Perhaps Jerra can use this portion of the verdict to attend community college, as Defendants suggest.[4]

For the reasons discussed above, the Court **DENIES** Defendants' Motion on all grounds.

## V. JERRA'S MOTION FOR PRE- AND POST-JUDGMENT INTEREST

The trial court has discretion to award pre-judgment interest. *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013). The Court must award post-judgment interest, as set forth at 28 U.S.C. § 1961. *Barnard*, 721 F.3d at 1078 (holding abuse of discretion not to award post-judgment interest pursuant to § 1961). Defendants claim: 1) Jerra waived his right to any interest because he failed to plead this relief; 2) even if he did not waive his right to interest, Jerra may not recover pre-judgment interest because it would amount to double recovery in light of the jury's award for future harm. (*See generally* Opp'n, ECF No. 326.)

### A. Jerra Did Not Waive His Right to Interest

First, Defendants contend that Jerra failed to plead a request for interest in the operative complaint, pretrial conference order, or initial disclosures. (*Id.* at 2–4.) Defendants cite *Peck v. Min-E-Con P*, 5 F.3d 358, 1993 WL 326460, at *5 (9th Cir. 1993) (unpublished), for the proposition that Jerra forfeited his claim for interest by "failing to request it until over six months after trial…." (Opp'n 2, ECF No. 326.) However, as Jerra points out in Reply, *Peck* says no such thing. (Reply 2–3, ECF No.

---

[4] Magana also asserts that certain evidence should be excluded in a new trial because it was only relevant to Jerra's FTCA claim, which has since been dismissed, and not relevant to Jerra's *Bivens* claims. (Mot. 24–25, ECF No. 306.) Because the Court declines to grant a new trial, it does not address this argument.

328.)

For one, *Peck* is an unpublished disposition issued before January 1, 2007, and thus "may not be cited to the courts of this circuit," except in circumstances not applicable here, such as to demonstrate res judicata. 9th Cir. R. 36-3 (citation of unpublished dispositions or orders). Second, even if *Peck* had a precedential effect, the opinion relied on Oregon law in denying pre-judgment interest, and specifically explained that, "[f]ailure to request prejudgment interest in the pre-trial order *does not* bar recovery of prejudgment interest." *Peck*, 1993 WL 326460, at *5 (emphasis added) (citing *Gelfgren v. Republic Nat'l Life Ins. Co.*, 680 F.2d 79, 82 (9th Cir. 1982)). At best, Defendants' citation and reading of *Peck* was lazy; at worst, it was disingenuous. In either case, it does not bar pre-judgment interest for failure to plead it in advance of judgment. *See Sierra Pac. Power Co. v. Harford Steam Boiler Inspection & Ins. Co.*, 673 F. App'x 739, 741–42 (9th Cir. 2016) (unpublished)[5] (citing *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 176 & n.3 (1989)); *Ash Grove Cement Co. v. Liberty Mut. Ins. Co.*, No. 3:09–cv–00239–HZ, 2014 WL 837389, at *19 (D. Or. Mar. 3, 2014) (citing *Soderhamn Mach. Mfg. Co. v. Martin Bros. Container & Timber Prods. Corp.*, 415 F.2d 1058, 1064 (9th Cir. 1969)) ("The Ninth Circuit has held that '[t]he right to recover prejudgment interest was not affected by [plaintiff's] failure to demand interest in its federal pleadings.").

**B.     The Equities Favor Awarding Pre-Judgment Interest & Compounding It**

In evaluating whether, and how much, to award in pre-judgment interest, a "court's discretion is generally guided by the interest in making the wronged party whole (i.e., complete compensation), as well as considerations of fairness." *Miller v. Schmitz*, No. 1:12–cv–0137 LJO SAB, 2014 WL 68883, at *1 (E.D. Cal. Jan. 8, 2014) (citing *Osterneck*, 489 U.S. at 176).

Defendants claim that "[a]lthough pre-judgment interest can be awarded on past

---

[5] While this case, too, is unpublished, it was issued after January 1, 2007, and thus parties may cite it within this circuit. 9th Cir. R. 36-3(b).

damages, it cannot be awarded on future damages…." (Opp'n 3 (citing *Columbia Brick Works, Inc. v. Royal ins. Co. of Am.*, 768 F.2d 1066, 1068 (9th Cir. 1985)).) Defendants claim that, had Jerra requested interest before trial, they would have required a special verdict form that parsed out past and future damages. *Id.* Now, Defendants argue the Court should deny pre-judgment interest altogether because it cannot sort out, which portion of the jury's verdict was for past damages, and which portion was for future damages. (Opp'n 6, ECF No. 326.) However, in *Barnard*, the Ninth Circuit remanded to the district court where the district court "refused to award prejudgment interest because the jury returned a general verdict that did not distinguish between past and future damages." 721 F.3d at 1078. The Ninth Circuit explained that "the district court should consider the balance of the equities in making this determination, including whether it may be advisable to award prejudgment interest on a prorated portion of the award." *Id.* Jerra provides just such a reasonable solution here: to reduce the $500,000 compensatory verdict by $179,500, which is the amount Jerra requested, at most, as future damages. (Apr. 6 Tr. 54:15–64:9, ECF No. 312 (testimony of Dr. Fisk regarding future treatment); Apr. 11 Tr. 85:4–11, ECF No. 318 (closing argument requesting future damages of "$175,000 plus, give or take, because it is an estimate…").) Jerra also reiterates the jury's findings regarding the severity of Magana's conduct and Jerra's harm to further support an award of pre-judgment interest that will fully compensate him for his injuries. (Pl.'s Mot. 5–7, ECF No. 307 (weighing equities).) Accordingly, the Court finds Jerra is entitled to pre-judgment interest on $320,500, which the Court reasonably infers represents the jury's compensation for past harm. *See Barnard*, 721 F.3d at 1078.

Defendants also argue that Jerra should not be entitled to pre-judgment interest because he delayed in bringing his claim. (Opp'n 5–6, ECF No. 326.) Defendants seem to forget that Jerra litigated this case and defeated a motion to dismiss without the assistance of an attorney, and only retained pro bono counsel *after* successfully defeating Defendants' summary judgment motion. (Order, ECF No. 202; *see also* Ex.

25

A to Serbin Decl., ECF No. 328-1 (summarizing extensions requested by each party).) This history weighs in favor of awarding Jerra pre-judgment interest.

Defendants next contend that calculating compound interest is inappropriate. (Opp'n 6–7, ECF No. 326.) "The norm in federal litigation is to compound pre-judgment interest…." *United States ex rel. Macias v. Pac. Health Corp.*, CV 12-00960 RSWL (JPR), 2016 WL 8722639, at *11 (C.D. Cal. Oct. 7, 2016) (citing *Am. Nat'l Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys.*, 325 F.3d 924, 937 (7th Cir. 2003)); *see also Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 840 (9th Cir. 2012) (noting that § 1961(a), which sets the appropriate rate of interest, is followed by § 1961(b), which provides for compounded interest). The Court finds compound interest is the appropriate calculation here.[6] Accordingly, the Court **GRANTS** Jerra's Motion to Alter the Judgment to include pre-judgment interest on the $320,500 past, compensatory damages, at 1.31%, compounded. *See Murphy v. City of Elko*, 976 F. Supp. 1359, 1364 (D. Nev. 1997) (applying 28 U.S.C. § 1961 interest rate to pre-judgment interest award in Section 1983 claim); *see also* Serbin Decl., Ex. 1, ECF No. 307-2 (weekly average of 1-year constant maturity Treasury yield for calendar week, September 18–22, 2017, is 1.31%).

**C.    Post-Judgment Interest**

Defendants do not dispute that post-judgment interest is mandatory. (Opp'n 2, ECF No. 326.) Because the Court rejects Defendants' waiver argument, it **GRANTS** Jerra's request to include post-judgment interest on the entire amount of the jury's verdict. *See Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 291 (9th Cir. 1995).

## VI.    CONCLUSION

For the reasons explained above, the Court:

---

[6] Defendants do not dispute the days from which Jerra's claims began to accrue for purposes of calculating pre-judgment interest, and therefore the Court does not address Jerra's arguments regarding the same.

- **DENIES** Defendants' Renewed Motion for Judgment as a Matter of Law; Motion to Alter or Amend Judgment; Motion for Relief from Judgment; and Motion for New Trial (ECF No. 306);
- **GRANTS**, in part, Jerra's Motion to Alter or Amend Judgment, as set forth in this Order (ECF No. 307); and
- **ORDERS** the parties to meet and confer and submit a proposed amended judgment that conforms to the rulings in this Order. The parties must submit the proposed amended judgment on, or before, **April 13, 2018**.

**IT IS SO ORDERED.**

March 29, 2018

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**